Without a rehash of what has already been addressed on the brief, I would like to briefly address the District Court's procedural ruling. The District Court's analysis recognized that under Lackawanna, the petitioner's claim could be construed as a challenge to his current sentence, as enhanced by the invalid prior, and thus satisfy the in-custody rule. However, the District Court's citing Lackawanna concluded that I had failed to pursue those remedies while they were available, and therefore waived any future challenge. The District Court further concluded that I had failed to satisfy either of the Lackawanna criteria regarding exceptions to that general rule. My contention, however, is that the District Court's finding was in error. In light of the facts of the case, first, though the prior Los Angeles conviction had in fact fully expired, the issue regarding the misadvisement was basically moot in the State Appellate Courts until May 30, 2008, the date at which the State unconstitutionally breached the promise it made to the prior 2003 agreement, a deal that, I would have to emphasize, I would not have entered if not for the assurance given by the State that my 422 charge itself was not a strike. Second, in noting the actual stipulation made on the record during the March 2000 plea hearing, the District Court in its report and recommendation finding under its procedural history, page 3, Hold on one second. Judge Watford would like to ask you a question. Yes. So when you entered the plea agreement back in 2000, when was the first time that the subject of whether that conviction would count as a strike, when did that first come up? It was actually during the sentencing phase of the hearing. Towards the end, which you will find on page 7 of the transcript, number 17 through 28, the judge asked if there was anything else to advise the defendant regarding the terms of the consequences, etc., and asked if we were finished with the plea. Right. No, I know that, but I guess at that point you had already pleaded guilty, right? I pleaded guilty, but the prosecutor responded yes, that they were finished. It was at that point that I reminded my counsel about the promise that this issue was going to be addressed in the courtroom. It was at that point that the prosecutor said, excuse me, Your Honor, and raised the issue that I had addressed. Okay, and I guess my question is, did the subject come up during the plea negotiations prior to that mention at the sentencing phase of your hearing? No, because the plea negotiation period wasn't even addressed during the hearing. It was basically the time that I was going to be given and the credits. At that time when I noticed that the prosecutor had failed to bring up that issue, that's when I reminded my counsel, and that's why the prosecutor immediately after or during the sentencing phase brought that issue to the court's attention. So you had had discussions with the prosecutor before the hearing about whether that conviction would count as a strike? Well, yeah, of course. As you can see on the transcript, the prosecutor mentioned that he took the time to check with his appellate department and also read the proposition itself, which would, of course, indicate the importance of the strike issue and me accepting the prosecutor's offer. Okay. Okay, thank you. Thank you. Do you have anything else, any other points you want to make, Mr. Dubrin? You mean to continue? Yes. Yes. Excuse me real quick. I would like to briefly raise the Supreme Court case in Santa Fe versus New York held that when a plea rests on any significant degree on the promise or agreement of the prosecutor so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. This court, following the guidance of Santa Fe and David versus Woodford, a case very similar to my own, if not identical, held that basically a stipulation made by the state as part of the defendant's plea bargain regarding what doesn't count as a strike is binding under California's contract law for the purpose of future criminal proceedings. So in light of the evidence and standing case story, I believe that the district court erred in its procedural ruling. Okay. Mr. Dubrin, we're going to hear from Mr. Wildman, and then you'll get a chance to respond to his remarks. Okay. So let me know if you can't hear him. All right. Mr. Wildman. Good morning. May it please the court, David Wildman, Deputy Attorney General for the respondent. The district court got it right in this case. Whether the 2010 federal petition that Mr. Dubrin filed is construed as an attack on the 2000 conviction in L.A. or the 2008 conviction, his claim is not cognizable. He's not in custody anymore on the 2000 conviction. He's fully served his term. Parole expired on March 7th, 2007. So that's expired under Malangvi Cook in Lackawanna. It's very clear that he's not in custody, and he can't challenge the 2000 conviction straight on. One further point that I'd like to make on that that's not brought up in the briefs, just a few months ago in September, Mr. Dubrin filed an additional federal petition challenging his 2008 San Bernardino conviction. So if this present petition before this Court is construed as challenging that 2008 conviction, I think we've got a problem, and maybe that second petition is successive, and my office may make that argument in district court. Well, we're dealing with this petition. Yes, Your Honor. I would construe it, given that Mr. Dubrin is proceeding pro se, I would construe it as an attack on the 2008 conviction. Under Lackawanna, he is allowed to challenge the constitutional validity of the 2000 conviction if he can show that the state court, without justification, refused to rule on a constitutional claim that he presented. He did raise in a state habeas petition, I think it was in 2004 or 2005, the very argument that he's trying to make now, and the state courts refused to rule on it for a reason that I think is completely illegitimate. They said that he wasn't in custody and, therefore, they didn't have jurisdiction. Well, he was in custody. I assume you can see that now, right? Mr. Dubrin was in custody, as we've argued, until 2007. What's that? He was in custody until 2007. Until 2007, right. And in 2004 and 2005, the state court said, we're not going to reach your constitutional claim, Mr. Dubrin, because you're not in custody. And you can see that that was error, right? That is what the California Court of Appeal and the Supreme Court ruled in both of the state habeas petitions in 2005. And that was error, right? I don't understand how they got the ruling. The only thing I can imagine is what it is is the court looked at the face of the petition, and the face of the petition shows that he was out of prison on that conviction at that time. And, therefore, based on the face of the petition, the courts ruled he was not in custody. How is that justified for the state court to say, we're not going to reach your constitutional claim at the time that it should have been addressed, because of this erroneous view that he wasn't in custody? How is that? I mean, Lackawanna says if the state court, without justification, refuses to rule in the claim, the petitioner can get it heard now. I don't understand how that's with justification. If I may back up for just one second, the majority in Lackawanna actually only found one exception, which is the Gideon rule. And there's no Gideon error in this case. Mr. Dubrin did have counsel at the 2000 proceedings. He, in fact, claims ineffective assistance with counsel, showing he had counsel. Justice O'Connor, writing for a plurality, discussed the possibility that there may be some other exceptions. And has that possibility been foreclosed by any of our precedent? No, it hasn't, Your Honor. And it is also dictated in there, so it's not controlling authority. Okay. Well, I'm saying that the path is open to our court right now to give teeth to this second exception that's, I agree with you, it's a plurality of the court, but it's nonetheless for justice of the Supreme Court, saying that they think there might be circumstances in which the state court, without justification, refuses to rule. And I'm saying, why doesn't that exception apply here? I haven't heard anything from you yet to convince me otherwise. Sure. As I read that exception, Justice O'Connor is talking about a state court, without justification, refusing to rule on the claim. Here we have a ruling from the California Court of Appeal and the Supreme Court. Granted, we can disagree whether the ruling is a correct ruling and whether ---- You think that the courts back in 2004, 2005 ruled on his constitutional claim? They did no such thing. Well, the exception, as stated here, is whether the defendant can be faulted for having to obtain timely review. For example, a state court may, without justification, refuse to rule on the constitutional claim. And they did. Are you disagreeing with that? I am disagreeing. Because the phrase, without justification, Your Honor, the court ---- Let's focus on the phrase, rule on the constitutional claim. Did they do that? Well, they didn't refuse to rule on his petition. They didn't rule on the precise claim. Okay. So let's go back to the without justification. Why was there a refusal to rule with justification? Well, the justification given is that he was not in custody according to the ---- But he was in custody. You've conceded that. Yes, Your Honor. And the proper tact for Mr. Dubrin to take at that point was to either file a new petition, a motion for reconsideration, or to go into Federal court and say that that the state court got it wrong, as he's doing now in this petition. And he could have done that before 2007 while he was still in custody on the 2000 conviction and no need to go behind Lackawanna. The question that Justice O'Connor poses here is whether the petitioner is not at fault for proceeding in a timely manner before he's out of custody. And in this case, Mr. Dubrin didn't proceed to attack the finding that he was not in custody by filing a motion for reconsideration. He didn't pursue it in Federal court, in the district court with a Federal habeas petition saying his constitutional rights have been violated. So it wasn't state action that prevented him from proceeding further. And really, I think what this exception is looking at is whether there was a forum available for him to present his claims. And there was a forum available. He needed to tell the state courts, look, you got it wrong. How do you really think that's fair that a pro se petitioner is supposed to understand that even though he's not physically in custody but still under supervision, that that counts as being in custody, even when the state court has told him, hey, sir, you're not in custody. We can't rule on your claim. He's supposed to know that that's error? Well, first of all, Mr. Dubrin has done a very good job bringing his issues before this Court. But second of all, that is the burden he bears. It is a valid conviction. It's been through. And he bears the burden of pursuing it. And he had a forum available for review, and that forum was to tell the state court, you got it wrong. I am still in custody because I have a parole that has not expired yet. I got to tell you, that's not intuitive to me at all. I had to go look up the cases to make sure. Is that really right? Yeah, well, it turns out that's true. Even though you're not in custody physically, you can still be in custody for purposes of habeas review. That's completely counterintuitive, certainly to lay people. I would submit to most lawyers. Sure. The custody requirement in state court is very similar to the one in federal court. And the case cited by California Supreme Court in denying the habeas petition, Wesley, states that, makes that clear. Is the Supreme Court's order in the excerpts of record, in your supplemental excerpts of record? I'm not sure if it's in the supplemental excerpts. I know it is in the lodged documents that were transmitted to this court two weeks ago. All right. What did the Supreme Court's order say? What was the exact wording of it? Petition for writ of habeas corpus is denied. C. Inray, Wesley, W. 1981, 125, Calop, III. And Wesley teaches? Teaches that custody includes being on parole. So they deny it. That must have meant that they didn't feel he was in custody, as Judge Blackford is saying. Yes. That's how I read that page citation. All right. And your position is that Mr. Dubrin should have known, oh, boy, that's error. I need to go back and tell them that they got that wrong, because I'm still on parole. Well, I'm not going to say that he should have known. I don't know if he had the legal training. But as a he was not prevented from going forth into state court and saying that that was wrong. He was not prevented from bringing his claim into federal court. And really, I think what we're looking at here under the exception that Justice O'Connor discusses as a possibility is whether avenues of relief were close to him, whether he had an opportunity to bring it, or whether the new federal position is his first and only forum for bringing review of the prior conviction. Let me ask you another question, sort of a little bit different. If he were to get over the Lackawanna Bar and you get to the merits, what would we do with this? Send it back to the district court? Yes. The district court ruled on the in-custody issue. The district court did not reach the timeliness or the merits. And we do. If this is construed as being part of the 2008 conviction as enhanced, there is a decision, a recent decision by the California Court of Appeal on this issue. So a determination needs to be made by the district court whether that is valid under the ADPA. Okay. Thank you, Mr. Wildman. Mr. Dubrin? Yes. Okay. You have a few minutes to respond to what Mr. Wildman argued before us. Okay. Thank you. In response to Mr. Wildman's statement regarding the 2005 petitions that I filed in the state court, it was my understanding that these petitions were denied in the appellate court and the state supreme court because they found that I was not in custody because the issues were moot. Basically, even though I was misadvised during the plea of the 2000 conviction, I was not in custody because there was no prejudicial effect occurring because of that misadvisement. It's my contention that in 2008, when I was sentenced on a new conviction on new charges, that prior misadvisement was used against me. That prior plea conviction was used as a prior strike against me, and that's when I became aware that, at least in my eyes at that time, that the issue was no longer moot, and I addressed it in a writ of habeas corpus to the state and then into the federal courts. Any questions? Anything else, Mr. Dubrin? No, that's it. Okay. Thank you. Well, then we'll submit this case at this time, and thank you, Mr. Dubrin. All right. Thank you. And, Mr. Wildman, we appreciate the arguments, and that'll take care of that case. All right. Thank you.
judges: Conlon, Paez, Watford